**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**OESTERLEN SERVICES FOR YOUTH, INC., Respondent.**

No. 79–1554.

United States Court of Appeals, Sixth Circuit.

May 13, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, Ralph Simpson, N. L. R. B., Washington, D. C., Emil C. Farkas, Director, Region 9, N. L. R. B., Cincinnati, Ohio, for petitioner.

David A. Weaver, Martin, Browne, Hull & Harper, Springfield, Ohio, for respondent.

Before MERRITT, BROWN and JONES, Circuit Judges.

## ORDER

Oesterlen Services for Youth, Inc., operates a mental health care facility in Springfield, Ohio. On October 20, 1978, an election was conducted among certain employees to determine whether they wished to be represented by the Service, Hospital, Nursing Home and Public Employees Union, Local No. 47 (the Union). Of approximately 36 eligible voters, 17 voted for the Union, 12 voted against, and four ballots had been challenged. The number of challenged ballots was not sufficient to affect the results of the election.

■ On October 27, Oesterlen filed five objections to the election alleging that certain actions of the Board's agent and of the Union's observer prevented a fair election. The Regional Director conducted an administrative investigation. On December 11, the Regional Director overruled all of the Company's objections. The Board affirmed. Oesterlen refused to bargain with the Union. Thus, the Board petitioned for enforcement of its Order that Oesterlen violated Section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* by refusing to bargain with the duly certified collective bargaining representative of its employees. Applying the well settled rule that "a party who seeks to overturn the results of a representation election has the burden to show that the election was not fairly conducted," *NLRB v. Bostik, Division, USM Corp.,* 517 F.2d 971, 975 (6th Cir. 1975), we grant enforcement.

■ During the election, the Board agent absented himself from the polling area for ten minutes, and took with him the unused ballots. Though he failed to seal the ballot box, both the Union's and Oesterlen's observers constantly watched the box. Three employees presented themselves to vote. Each employee was told that they could vote when the Board agent returned. The three employees subsequently voted. Oesterlen contends that the employees who failed to vote may have been influenced by the Board agent's action in leaving the polls and leaving the ballot box with the observers. However, no evidence has been presented in support of such contention. The employees known to have been in the polling area during the Board agent's absence eventually cast a ballot. On the basis of the above cited facts, we agree with the Board that the integrity of the election had been maintained. *Compare Anchor Coupling Co., Inc.,* 171 NLRB 1296 *with Kerona Plastics Extrusion Company,* 196 NLRB 1120 (1972).

Oesterlen also contends that the Union's observer engaged in unlawful electioneering with several of the employees. The Union's observer exchanged pleasantries with mostly every voter. During the Board agent's absence, one employee who wished to vote seated herself behind the observers' table and began a conversation with the Union observer. Oesterlen's observer stat-

ed that the two discussed their work schedules as well as the fact that another employee had worked a full week before deciding to quit. Apparently, most employees know after one day whether they like the job. Additionally, the Union's observer stated to one employee that he intended to be at the site of the Union's organizational meetings later that evening. Finally, in response to a voter's question concerning the turnout at the polls, the Union observer stated his belief that "more" employees would probably vote at the shift change.

It is a well settled Board rule that prolonged conversations between observers and voters in the polling area are deemed prejudicial without investigation as to the content of the conversations. *Milchem, Inc.,* 170 NLRB 362 (1968). *See also Midwest Stock Exchange v. NLRB,* 620 F.2d 629 (7th Cir. 1980). However, not "any chance, isolated, innocuous comment or inquiry by an observer to a voter will necessarily void the election." *Milchem* at 363. The reasons for the rule set forth in *Milchem* are not difficult to fathom. As was aptly stated in *Midwest Stock Exchange* :

> The Board reasoned that the potential for distraction last minute electioneering, and unfair advantage, justified a 'strict rule' against such conduct without requiring an examination into the substance or effect of the conversations.

Applying these well settled principles to the above-cited facts, we hold that the record supports the Board's finding that the Union observer's conversations constitute nothing more than "innocuous" conversation that did not constitute electioneering.

We have reviewed Oesterlen's other allegations of error and find that they are without merit.

Accordingly, the Board's Order is ENFORCED.